**Fred M. BROWN, Plaintiff,**

v.

**E.F. HUTTON & CO., INC., Defendant.**

**No. 80–1400–CIV–SPELLMAN.**

United States District Court,
S.D. Florida,
Miami Division.

April 30, 1985.

Lewis N. Brown, Miami, Fla., for plaintiff.

Gill S. Freeman, Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER COMPELLING ARBITRATION ON COUNTS II, III, IV AND V OF PLAINTIFF'S AMENDED COMPLAINT

SPELLMAN, District Judge.

THIS CAUSE came before the Court on the Defendant's Motion and Application for Order Compelling Arbitration and Staying Arbitration Pending Litigation of Plaintiff's Securities Claims. For the following reasons the Court finds that Counts II, III, IV, and V of Plaintiff's Second Amended Complaint should be submitted to arbitration forthwith.

### I.

When Plaintiff, Fred M. Brown, opened a brokerage account with the Defendant, E.F. Hutton, he signed a customer agreement providing that he would arbitrate any controversy arising out of or related to his account with E.F. Hutton. There is no question that the customer agreement evidences a transaction involving commerce and therefore comes within the ambit of the Federal Arbitration Act, 9 U.S.C. § 2 (1976).

Plaintiff filed a five count complaint against the Defendant in connection with his account alleging one federal securities claim (Count I) and multiple Florida statutory and common law claims (Counts II through IV).[1] In accordance with the customer agreement and the Federal Arbitration Act, Hutton moved this Court for an Order compelling arbitration on the state law claims. Because Hutton assumed that under *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) the federal claim for violation of Section 10(b) of the Securities Exchange Act of 1934 was not subject to the arbitration provision of the contract and could only be resolved in a federal forum, it did not move to compel arbitration on that count.

Plaintiff opposes arbitration of the state claims. His primary argument is that the Defendant has waived arbitration because it did not request arbitration until after the Plaintiff filed a Second Amended Complaint, nearly four years after the initiation of this lawsuit. A review of the procedural history of this case, however, demonstrates

---

**1.** Count I alleges HUTTON's violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, 17 C.F.R. 240–10b–5. Counts II, III, IV and V allege fraudulent misrepresentation, violations of Section 517.211 and 517.301, Florida Statutes, and breach of fiduciary duty, respectively.

that Defendant's demand for arbitration was not untimely. Moreover, even if Defendant should have moved to enforce the arbitration provision of the contract earlier, a default or a waiver has not occurred because the Plaintiff cannot point to any prejudice by the delay.

## II.

The Plaintiff filed his original complaint against Hutton in June of 1980. Plaintiff alleged that Hutton through its agent Philip Pauze, recommended to Plaintiff that he sell short 1,000 shares of Resorts International stock. Plaintiff claimed that the financial damage caused therefrom was directly attributable to the Defendant. The original complaint did not allege, nor seek recovery for any transactions other than the Resorts International trade.

On June 24, 1983, an hour before the Plaintiff's scheduled deposition, Plaintiff agreed to a settlement. Thereafter, Plaintiff claimed that he did not understand the import of his agreement to settle and sought to set aside his agreement. This Court declined to enforce the settlement agreement and permitted Plaintiff to file a Second Amended Complaint.

This new complaint has significantly broadened the focus of the litigation in that Plaintiff now alleges that damage occurred with respect to the entire course of dealings between the parties—not simply one transaction. Whereas the original complaint alleged that the damages suffered by the Plaintiff totalled some $50,000 as a result of one "unsuitable" transaction, the Second Amended Complaint alleges that mismanagement of the entire account resulted in damages of $150,000.

■ An amended complaint under the Federal Rules supercedes the original complaint. *See Fritz v. Standard Security Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir.1982); Wright & Miller, *Federal Practice and Procedure*, § 1476, at 389–90. And when a plaintiff files an amended complaint which changes the theory or scope of the case, the Defendant is allowed to plead anew as though it were the original complaint filed by the Plaintiff. *See Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons Co.*, 50 F.R.D. 415 (D.Del.1970) (defendant permitted to file new counterclaim in response to amended complaint); *Archie and Allan Spiers, Inc. v. United States*, 296 F.2d 757, 766 (Ct.Cl. 1961) ("when the plaintiff amended, changing its theory, it was well within defendant's rights to file a new or amended answer changing its defense").

■ This Court finds that under the circumstances present here, the Defendant is entitled to a "fresh start" in answering Plaintiff's amended complaint. Indeed, it would be inequitable to entertain the Plaintiff's Second Amended Complaint without permitting the defendant to completely plead anew. If the Plaintiff had not been able to have his claims relate back to the date of the original pleading, the claims would have been time-barred. Accordingly, the Defendant should also be permitted, notwithstanding passage of time, to respond as if the second amended complaint were the original complaint and to invoke its contract right to arbitrate the state claims. As the *Bancroft* court noted:

> Since the amended pleader chooses to redo his original work, and receives the benefit of this *nunc pro tunc* treatment, he can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading.

50 F.R.D. at 419.

Because the Second Amended Complaint here greatly expands the factual allegations the Plaintiff has made against the Defendant, this case is readily distinguishable from *Weight Watchers of Quebec, Ltd v. Weight Watchers International, Inc.*, 398 F.Supp. 1057 (E.D.N.Y.1975) cited by the Plaintiffs. In *Weight Watchers*, the defendant, franchisor, moved for arbitration of a dispute with its franchisee after the franchisee filed an amended complaint. The defendant's motion for summary judgment on the merits had been denied prior to the filing of the amended complaint. The

court found that under the circumstances, the defendant had waived arbitration and that the filing of an amended complaint did not materially alter the situation. But unlike the Second Amended Complaint in this case, the amended complaint filed by the plaintiff in *Weight Watchers* did not add any new allegations—the amended complaint only "restate[d], in ... a clearer and more orderly fashion, the claims arising out of the matters already pleaded and dealt with in the summary judgment motion." *Id.* at 1060.

■ But even if the Defendant should have made his demand earlier, delay alone does not constitute a default or a waiver of a valid arbitration clause. Since there is a strong federal policy favoring arbitration, "any party arguing waiver of arbitration bears a heavy burden of proof." *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1025 (11th Cir.1982) (and cases cited therein). A party opposing arbitration must also demonstrate that he had been prejudiced by the delay. *See Gavlick Construction Co. v. H.F. Campbell Co.,* 526 F.2d 777, 783 (3rd Cir.1975); *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2nd Cir.1968). This Plaintiff has failed to do.

■ The pretrial discovery conducted in this case cannot have prejudiced the Plaintiff in that the discovery does not appear to have been extensive. The record indicates that since the institution of this litigation there has only been one deposition taken and it was noticed by the Plaintiff. While the Defendant propounded interrogatories and has served a production request, the discovery has been limited to the issues of the Resorts International trade. There has been no discovery of the alleged wrongdoings set forth in the second amended complaint with the exception of the aforesaid trade.

In *Mitsui & Co. Inc. v. C & H Refinery, Inc.,* 492 F.Supp. 115 (N.D.Cal.1980) the district court upheld one party's right to arbitrate claims notwithstanding discovery initiated by both parties. The court opined: "If the discovery record is sparse, an ob-

jecting party must show specifically how its case has been impaired. Absent such a showing, the strong policy favoring arbitration controls." *Id.* at 120. Since the Plaintiff here has not made a specific showing of prejudice, the Defendant is entitled to invoke its contract right.

### III.

■ Plaintiff's second argument against arbitration was based upon the Eleventh Circuit doctrine of "intertwining"—a doctrine that was recently rejected by the Supreme Court in *Dean Witter, Reynolds v. Byrd,* 470 U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (March 4, 1985). In that case, the Supreme Court found that a District Court is required to compel arbitration under the Federal Arbitration Act "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." According to the Court:

By its terms, the Act leaves no place for the exercise of discretion by the District Court, but instead mandates that District Courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.

The Court also made it clear that staying arbitration until after the federal claims have been litigated was inappropriate. *Id.* at ——, 105 S.Ct. at 1241. Arbitrable claims should be submitted to arbitration without regard to the status of the claims to be litigated in court.

### IV.

Plaintiff's final argument against arbitration is that under Florida law the Florida Securities claims cannot be submitted to arbitration. The case relied upon for this proposition, *Oppenheimer v. Young,* 456 So.2d 1175 (Fla.1984) was recently vacated by the Supreme Court in light of *Byrd,* 53 U.S.L.W. 3686 (March 26, 1985). But regardless of the Florida court's decision, it is plain that a federal court must apply the Federal Arbitration Act even when it pertains to state causes of action.

When Congress enacted the Federal Arbitration Act it "declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the partiews agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, ——, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). The "federal substantive law" created by the Act is applicable in both state and federal courts. Because the customer agreement here contains a valid arbitration clause and evidences a transaction involving commerce, the Federal Arbitration Act applies. The state law claims must be submitted to arbitration.