**FEDERATED DEPARTMENT STORES, INC., Plaintiff–Appellant,**

v.

**J.V.B. INDUSTRIES, INC., Defendant–Appellee.**

Nos. 88–3716, 89–3081.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 11, 1989.

Decided Feb. 1, 1990.

Robert M. Kincaid, Jr., Daniel G. Hale (argued), Baker & Hostetler, Columbus, Ohio, for plaintiff-appellant.

Vincent J. Lodico, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, Ohio, William B. Flynn (argued), Fitzpatrick, Flynn & Goetz, New York City, for defendant-appellee.

Before MARTIN and BOGGS, Circuit Judges, and ZATKOFF, District Judge.[*]

BOGGS, Circuit Judge.

Federated Department Stores (Federated) appeals three orders of the district court modifying an arbitration award rendered in favor of J.V.B. Industries, Inc. (JVB), as assignee of TAB Industries, Inc. (TAB). For the reasons that follow, we affirm the district court's orders.

## I

TAB was the drywall and ceiling contractor for renovation projects in two department stores owned by Federated in Columbus, Ohio and Indianapolis, Indiana. TAB is a corporate shell for JVB. Both companies were owned and operated by Thomas A. Brusca.

This dispute concerns the interpretation of construction contracts, executed on February 28, 1986, for the two renovation projects. Federated hired Associated Project Control (APC) as project manager; Ames, Elzey, Thomas and Partners (Ames, Elzey) as architects; the Walker Group/CNI, Inc. (Walker) as interior designers; and TAB as the drywall and ceiling builder. JVB and Federated disagree about the scope of work which the contracts required TAB to perform.

Both Walker, as interior designer, and Ames, Elzey, as architect, produced drawings for the renovations. The Walker drawings generally related to interior construction work, such as fixturing, floor coverings, partitioning, and decorative ceiling work. The Ames, Elzey drawings generally related to structural work, such as heating and cooling, plumbing, electrical, concrete, and masonry work. Each set of design documents contained nearly identical lists of General Conditions,[1] which defined the terms of the agreements between the parties. The contracts between Federated and TAB incorporated by reference these General Conditions.

On May 7, 1986, TAB informed project manager APC that its bid was limited to performing the work specified in the Walker drawings and did not include any of the work specified in the Ames, Elzey drawings. Federated maintained that TAB's bid reflected its full price for performing all of the drywall and ceiling work specified in either set of drawings.

The disputed work is that contained in the Ames, Elzey drawings but not in the Walker drawings: storefronts, escalator well columns, atriums, entrances, and much of the acoustical ceilings. At the demand of APC, TAB went ahead and performed the Ames, Elzey work, fearing termination. TAB demanded payment of an additional $516,000 for the Ames, Elzey work, which was completed on time at the Indianapolis

---

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. The chief difference is that the Walker General Conditions vested certain authority in the "Designer" and the Ames, Elzey General Conditions substituted the term "Architect" for the term "Designer."

store but not at the Columbus store.[2] The contracts stated that time was of the essence. Pursuant to Section 1.38(A)(3) of the General Conditions, governing the failure to complete the work within the time limits, Federated terminated TAB's contract for the Columbus store on September 9, 1986.

JVB, as TAB's assignee, sued Federated on November 19, 1986 for compensation for work performed, damages for breach of contract and willful interference with TAB's performance,[3] interest, costs and attorney fees. Federated exercised its contractual right to arbitrate, rather than litigate, the claim, and also sought to recover through arbitration the costs Federated had incurred in completing the job at Columbus. On January 30, 1987, the District Court for the Eastern District of New York, where JVB filed its complaint, stayed the action pending arbitration. Before arbitration proceedings began, JVB went out of business.

At the arbitration hearings, JVB sought $1.91 million in contract claims, less $195,-579.04 for a payment of materialmen's liens that Federated made directly to the lienholders. On the opening day of arbitration, JVB surprised Federated by submitting additional claims for the destruction of both TAB's and JVB's businesses. JVB claimed that, as a result of Federated's refusal to pay TAB the extra amounts claimed for the Ames, Elzey work, TAB could not meet its financial obligations to JVB and others, leaving both TAB and JVB unable to bid on other jobs and forcing them into financial ruin. Federated objected to the arbitrability of the tort claims for business termination and refused to arbitrate these claims. The arbitrators agreed to hear the tort claims at a later, as yet unscheduled, date if the claims were determined to be arbitrable.

On November 1, 1987, the arbitration panel awarded JVB $1,789,957.89, plus attorney fees and costs, only on the contract claims. JVB filed a Motion to Confirm Arbitration Award with the District Court for the Eastern District of New York, and the case was then transferred to the District Court for the Southern District of Ohio. On July 5, 1988, the district court issued its first order, remanding the award to the arbitrators with instructions to reduce the award by an amount the arbitrators wrongly included for certain tax liens. On July 7, 1988, the district court issued its second order, holding that the business termination claims were properly arbitrable.

Federated appealed the July 5 and July 7 orders, and the district court stayed the arbitration of the business destruction claims pending the outcome of that appeal. JVB moved to dismiss the appeal, asserting that the July 5 and July 7 orders were not final appealable orders. On December 22, 1988, while JVB's motion to dismiss was pending, the district court issued its third order, stating that the arbitrators, on remand, had erred in their recalculation of the award minus the tax lien, and the court entered judgment for JVB in the amount of $1,617,089.51. Federated then filed an appeal of the December 22, 1988 order. JVB withdrew its motion to dismiss, and Federated's two appeals (of the July 5 and July 7 orders (88–3716) and of the December 22 order (89–3081)) have been consolidated here. Essentially six issues—four involving the proper construction of the contracts and two involving the arbitrability of the business destruction claims—are presented for our review. We consider them in that order.

## II

Federated first asserts that the arbitrators exceeded their authority in construing the contracts in JVB's favor. The Arbitration Act, 9 U.S.C. § 1 *et seq.*, provides the statutory basis for a district court's review of an arbitration award. 9 U.S.C. § 10 sets out the four grounds on which an award may be vacated. Three of the grounds deal with misconduct by the parties or the

---

2. Both stores were to open on October 1, 1986.

3. JVB claims that APC repeatedly changed construction schedules, forcing TAB to accelerate its work and to pay for considerable overtime labor.

arbitrators. As no misconduct is alleged here, only the fourth ground, § 10(d), may provide a basis for vacating this award. According to § 10(d), the party seeking review must prove that "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

■ Given the strong federal policy in favor of enforcing arbitration agreements, see *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), the burden of proving that the arbitrators exceeded their powers is very great. In *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), the Supreme Court held that a court must enforce an award "so long as it draws its essence from the . . . agreement" and so long as the arbitrator does not "dispense his own brand of industrial justice." In general, the role of courts in reviewing arbitration awards is extremely limited:

> [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987). This circuit has confirmed the rule that "the standard of review in arbitration cases is very narrow." *Dobbs, Inc. v. Local No. 614, International Brotherhood of Teamsters*, 813 F.2d 85, 86 (6th Cir.1987) (quoting *Anaconda Co. v. District Lodge No. 27 of the International Association of Machinists and Aerospace Workers*, 693 F.2d 35, 36 (6th Cir.1982)).

This circuit has determined that " '[m]anifest disregard of the law' means more than a mere error in interpretation or application of the law." *Anaconda*, 693 F.2d at 37–38. In *Anaconda*, a labor arbitration case, this circuit stated that:

> In essence, the Company seeks to have the arbitrator's decision vacated because

it rests upon an erroneous interpretation of federal law. This court may not vacate the award on that ground. The parties bargained for final and binding arbitration and, in the vast majority of cases, will be bound by the arbitrator's decision, right or wrong.

*Id.* at 38.

Stressing our limited role in reviewing arbitration decisions, we upheld a commercial arbitration award in *Board of County Commissioners of Lawrence County, Ohio v. L. Robert Kimball and Associates*, 860 F.2d 683 (6th Cir.1988). The district court had vacated the arbitration award on the ground that the services contracts between the plaintiff county and the defendant engineering firm violated public policy since they were for an indefinite term. We reversed the district court, holding that questions of contract interpretation are within the province of the arbitrator. In *Board of County Commissioners*, 860 F.2d at 685, we cited *Misco*, 108 S.Ct. at 370, for the proposition that:

> the courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.

■ Arbitrators do not exceed their authority unless they display a manifest disregard of the law. A misinterpretation of the contracts will not, in itself, vitiate the award. Federated claims that the arbitrators disregarded the clear and unambiguous language of the contracts. We hold, however, that Federated's claim amounts merely to allegations of errors in interpretation. The arbitrators did not disregard the language of the contracts and Federated fails to prove that the arbitrators displayed a manifest disregard of the law.

**A**

■ Federated argues that the arbitrators exceeded their authority first by substituting their resolution of the dispute surrounding the Ames, Elzey work for the architect's, when the contracts state that TAB would be bound by the decision of the

architect. The relevant clauses are contained in Section 1.6 of the Ames, Elzey General Conditions:

A. Should Contractor, in preparing his bid or any time thereafter, find any discrepancy, inconsistency, conflict or omission in, or be in doubt as to the exact meaning of the Drawings or Specifications, he shall immediately and before proceeding further, notify the Architect in writing.

\* \* \* \* \* \*

C. Should Contractor fail to notify Owner or Architect and proceed further in preparation of his bid, or in prosecution of work, he shall be bound by Architect's interpretation of such discrepancy....

Federated argues that TAB, as a contractor, is bound by the architect's (Ames, Elzey's) interpretation of any discrepancy, including a dispute over whether TAB must perform the Ames, Elzey work at all. In support of its argument that the arbitrators could not substitute their interpretation for that of the architect, Federated cites *General Drivers, Warehouseman and Helpers, Local Union No. 89 v. Hays & Nicoulin, Inc.*, 594 F.2d 1093 (6th Cir. 1979) (per curiam), where we held that the district court properly vacated an award when the arbitrator ignored a clause in the bargaining agreement giving sole authority to resolve a dispute to the employer.

*General Drivers* is factually distinguishable from, and does not control, our case. The clause in *General Drivers* giving the employer sole authority to resolve the dispute was unambiguous. By contrast, the provisions of section 1.6 of the General Conditions to which Federated points are vague and subject to interpretation. The arbitrators read the provisions to give the architect the power to resolve only discrepancies as to artistic effect. They held that Section 1.6 did not give the architect the power to resolve bid disputes. Since the arbitrators were "arguably construing or applying the contract," *Misco*, 108 S.Ct. at 371, they did not exceed their authority.

This conclusion is inescapable in light of the broad arbitration clause in the contracts, which subjects all claims arising out of the contract to arbitration. That clause appears in § 1.42(A) of the General Conditions and states:

At Owner's option, all claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents, or the breach thereof, except with respect to the Designer's decisions on matters relating to artistic effect, ... shall be decided by arbitration.

As Section 1.6 of the General Conditions was fairly interpreted not to exempt from this broad arbitration clause the power of the arbitrators to resolve bid disputes, Federated has not shown that the arbitrators exceeded their authority.[4]

**B**

■ Federated next claims that the arbitrators disregarded the clear and unambiguous language of the contracts concerning overtime compensation and compensation for loss of productivity. $565,000 of the damages sought by JVB was allocable to overtime costs and costs incurred due to scheduling changes.

Section 1.11(J) of the General Conditions states that an extension of time shall be a contractor's sole remedy for delay, unless the delay was caused by acts of intentional interference by the owner. The arbitrators held that, by requiring TAB to perform overtime work in order to complete on time the work shown on the Ames, Elzey drawings, Federated's actions constituted intentional interference. Since the arbitrators stayed within the exception contained in Section 1.11(J) in making this finding of fact, they were acting within the bounds of their authority. Finding intentional interference, the arbitrators were permitted to award damages. Federated's argument that the arbitrators' assessment of damages was contrary to the clear language of the agreements is without merit.

---

**4.** Federated also argues that TAB failed to give notice of this "discrepancy," as required by Section 1.6(C). Since the arbitrators fairly determined that "discrepancy" is not meant to include a bid dispute, Section 1.6(C) is inapplicable, and this argument is without merit.

Federated also argues that the arbitrators ignored the formula specified in the contracts for calculating TAB's compensation for overtime. That formula provides that the premium the owner pays for overtime labor excludes any allowance for the contractor's general overhead and profit. Federated claims that the arbitrators' award included amounts for overhead and profit, contrary to an express provision of the contracts.

Federated cannot prove exactly what the award included, because the arbitrators never specified the basis for the overtime award. Federated assumes the award included allowances for a loss of labor productivity, increased overhead, increased travel expenses, and profit on these amounts, simply because TAB requested compensation for all these expenses in its claim. Since the arbitrators did not explain their calculation, it is unclear how much, if any, of the lump sum award was attributable to expenses for which Section 1.11(G) forbade compensation. Because the arbitrators are not required to explain their reasoning, there is no evidence of manifest disregard of the law. *See United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Stroh Container Co. v. Delphi Industries, Inc.*, 783 F.2d 743, 750 (8th Cir.), *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986).

## C

Federated next asserts that under Ohio law, which governed the contracts, interest does not begin to accrue on a claim before judgment if the claim is unliquidated or disputed. *Royal Crown Plastics and Sales, Inc. v. Motorists Mutual Insurance Co.*, 51 Ohio App.2d 79, 366 N.E.2d 294 (1976). It claims that, as long as there was a dispute regarding TAB's performance, the amount of the contract price was uncertain, and the amount of the debt

could not be easily ascertained; therefore, when the arbitrators awarded $136,449.93 for prejudgment interest, they based the interest calculation on unliquidated damages. Federated argues that there is no basis in Ohio law for this part of the award and that the award should be proportionately reduced.

Federated's claim lacks merit for the same reason that its claim concerning overtime compensation fails. The arbitrators' award is a lump-sum award.[5] It does not, and it need not, split the award into its component parts. Federated assumes that $136,449.93 was included in the award for prejudgment interest because that was the amount that JVB requested. There is no indication by the arbitrators that they incorporated JVB's request into their award.

Federated looks for support for its argument to the district court's July 5 order, where Judge Graham reasoned that "[b]ased on the amount of the award, the Court concludes that the arbitrators did allow some or all of [JVB's requested] claim." The court did not determine that the entire $136,449.93 which JVB sought was incorporated into the award. It is impossible to determine how much, if any, of the award reflects prejudgment interest. If the arbitrators did include some prejudgment interest, they may have concluded that Federated's liability was liquidated. That conclusion is not reversible.

## D

Section 1.40(B) of the General Conditions provides that, in any dispute between the owner and a contractor which results in litigation, the prevailing party will be entitled to all costs, expenses and reasonable attorney fees. Federated claims that the district court erred by determining that JVB was the prevailing party and charging JVB's attorney fees to Federated. Federated argues that it was the prevailing party and is entitled to reimbursement by JVB for its attorney fees.

---

**5.** The award is a one-page summary by the Construction Industry Arbitration Tribunal stating that: 1) the claim of Federated is denied, 2) Federated shall pay TAB and JVB $1,789,957.89, and 3) Federated shall pay all administrative costs of the hearing, all attorney fees, and the arbitrators' compensation and expenses.

Federated calculates that it managed to convince the district court to reduce the arbitrators' award by 24%, from $1,789,957.89 plus $80,000 for fees, to $1,414,641.74. Federated claims that this reduction made JVB worse off, and Federated better off, after the district court's order.

The district court declared JVB to be the prevailing party in this litigation. It awarded JVB fees in the amount of $52,457.06. The court noted that Federated sought to vacate or modify JVB's award of $1,789,957.89 but achieved only limited success in reducing the award, while JVB was able to retain the bulk of its award. The district court's finding that JVB was the prevailing party is reasonable, and we agree with it.

### III

### A

■■ Federated claims that the district court erred by determining in its July 7, 1988 order that JVB's and TAB's business destruction claims were arbitrable. Federated argues that it never agreed to arbitrate the destruction of business claims.[6]

Section 1.42(A) of the General Conditions provides that "[a]t owner's option, all claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents, or the breach thereof ... shall be decided by arbitration." Federated invoked this arbitration provision and asserted claims against TAB for damages due to delays and allegedly defective work. TAB and JVB denied these claims and counterclaimed for additional compensation and damages, for which the arbitrator awarded them $1.7 million. TAB and JVB also advised the arbitrators at the beginning of the arbitration hearing that they intended

to pursue claims against Federated for the destruction of their businesses. Federated first received notice of the business destruction claim at the outset of the hearing.

Federated argues that, although the arbitration clause in Section 1.42(A) is very broad, JVB's business destruction claim is not a claim "arising out of, or relating to, the Contract Document, or the breach thereof." Federated asserts that the business destruction claims introduce legal elements into the dispute, such as malice and intent, which Federated never intended to have arbitrated by construction professionals. Federated claims that its option to demand or reject arbitration as a dispute resolution mechanism was revived when TAB and JVB presented a new claim at the hearing.

In support of its argument, Federated cites cases holding that a litigant in a civil case can request that the case be tried before a jury for the first time when a legal claim is added to an amended complaint which previously had asked only for equitable relief. We agree with the district court that the cases cited by Federated are inapposite, especially since Federated exercised its choice of forum knowing that the arbitrators were authorized to adjudicate any proper counterclaims. Furthermore, Federated may not renege on its demand for arbitration simply because it did not anticipate that TAB would assert a particular kind of counterclaim. We hold that the arbitration clause in Section 1.42(A) of the General Conditions is broad enough to encompass a tort claim originating in an alleged breach of the contracts. Finally, JVB met the procedural requirements for adding the tort claim; it properly filed its business destruction claim according to Rule 8 of the Construction Industry Arbitration Rules.[7]

6. Federated stated in its brief that it "refused to go forward with the arbitration of [the business destruction] claims." Appellant's Brief at 3. When one party refuses to arbitrate a claim under an agreement, 9 U.S.C. § 4 gives the opposing party the right to petition the district court for an order directing that arbitration on the claim proceed. We therefore have jurisdiction to hear the question of arbitrability. *See*

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (affirming the appellate court's directive that the district court enter a § 4 order to arbitrate).

7. Rule 8 allows a party to submit a new claim or counterclaim after the original claim is filed if the new claim is made in writing and a copy

Federated cites *Brown v. E.F. Hutton & Co.*, 610 F.Supp. 76 (S.D.Fla. 1985), and *Gilmore v. Shearson/American Express, Inc.*, 668 F.Supp. 314 (S.D.N.Y. 1987), for the proposition that where a defendant has waived the right to arbitration, that right is restored when a complaint is amended to add a new claim. These cases do not support Federated's argument. In *Brown*, the court relied on the policy of allowing parties liberally to select arbitration. After the amended complaint was filed, the court permitted the defendant to invoke for the first time its contract right to arbitrate. The court found that there was no waiver of a valid arbitration clause. 610 F.Supp. at 79. It did not find that an amended complaint revives a party's option to choose not to arbitrate. The court held that "[s]ince there is a strong federal policy favoring arbitration, 'any party arguing waiver of arbitration bears a heavy burden of proof.'" *Ibid.* (quoting *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir.1982)).

Similarly, in *Gilmore*, Shearson was allowed to revive its right to *compel arbitration*. The *Gilmore* court stated that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." 668 F.Supp. at 318 (quoting *Moses H. Cone Memorial Hospital*, 460 U.S. at 24–25, 103 S.Ct. at 941).

Federated cites no authority for the proposition that a party who is by contract granted the right to elect arbitration may renege on that election once made and *prevent arbitration*. Once Federated invoked arbitration, it became bound to participate in the arbitration. Federated argues that it agreed to arbitration based only on TAB's contract claims. What Federated in fact agreed to was the arbitration of all claims arising out of the dispute over the Ames, Elzey work. It did not retain the right selectively to omit from arbitration

certain claims or counterclaims, however surprising or legally intricate.

## B

Federated's final argument is that JVB had no right to compel arbitration of the business destruction claims because JVB was not a party to the construction contracts. Only TAB and Federated executed the contracts. We hold, however, that JVB was a proper party to the arbitration. JVB sought damages for the destruction of both JVB's and TAB's businesses. The record indicates that the operations and finances of TAB and JVB were closely interconnected, something which Federated does not dispute. Both companies were owned by Thomas A. Brusca, and both were operated out of the same office on Long Island. TAB was set up as a corporate entity just before it bid on the Federated construction jobs. It was established primarily to allow Brusca to enter construction contracts in the midwest with unionized labor. (JVB did not hire union members as employees.) Federated claims that JVB is merely TAB's assignee; that JVB can only pursue claims on behalf of TAB; and that it cannot bootstrap itself into privity of contract with Federated in order to pursue its own claims. Federated's argument is without merit.

JVB and TAB were alter egos. Brusca controlled both corporations, and TAB was a mere instrumentality of JVB. Although we do not conclude that TAB was a sham corporation, it is clear that JVB provided all the equipment, labor and management for the Federated jobs at Columbus and Indianapolis. TAB had no assets and no shareholders or management different from those of JVB. TAB was the creature of JVB; JVB was the real party in interest here. The law in this circuit is that courts will disregard the corporate form of shell corporations which are mere instrumentalities of their controlling corporations. *See Laborers' Pension Trust Fund v. Sidney*

is sent to the American Arbitration Association. A new claim may be filed even after the arbitrator is appointed if the arbitrator consents. JVB

filed its tort claim after the arbitrators were appointed, but the arbitrators agreed to hear the claim.

 

*Weinberger Homes, Inc.*, 872 F.2d 702, 704–05 (6th Cir.1988) (per curiam).

Federated even treated JVB as the real party in interest. In a letter dated March 9, 1987, Federated's counsel informed the American Arbitration Association that "it is our position that the agreement to arbitrate may be enforced against the assignee as well as the original contractor. We are of that position relative to the issues created by the demand and by the counterclaim." The arbitrators also dealt with JVB as the real party in interest. JVB was listed in the arbitration papers as respondent and was a party to the award. As Federated effectively consented to JVB's role as a respondent in the arbitration hearing, Federated now cannot contest JVB's role in the proceedings.

For the foregoing reasons, the orders of the district court in No. 88–3716 and No. 89–3081 are affirmed.

BOYCE F. MARTIN, Jr., Circuit Judge, concurring.

I concur with the decision and analysis of the majority opinion. I write only to emphasize that this case and many others reach our docket solely because arbitrators fail to state the reasons for their awards and decisions. While arbitrators are not obliged to the courts to give their reasons for an award, *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), the absence of any evidence of an arbitrator's decision process makes this Court's review of an arbitration award something of a judicial snipe hunt with counsel for the parties arguing about contract law analysis that may or may not have been manifestly disregarded by the arbitrator.

The record in this case narrowly indicates that the arbitrator did not engage in a manifest disregard of the law. Future arbitration appeals completely lacking in some statement of the arbitrator's reasons for making an award may not have the luxury of a sufficient record which indicates that the award was not based on a manifest disregard of the law. In such situations, this Court should decline the parties' invitation to hunt for snipe and reverse the arbitration award as a manifest disregard of the law. While this Court has a limited role in the review of arbitration awards, we are not a rubber stamp for unexplained and unsupported decisions rendered by arbitrators.