986 F.2d 1422
 16 Employee Benefits Cas. 2163, Pens. Plan Guide P 23883X
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
THE QUAKER OATS COMPANY, Plaintiff-Appellant,
v.
INTERNATIONAL CHEMICAL WORKERS UNION; Local 397,
International Chemical Workers Union, Defendants-Appellees.
 No. 92-5070.
 United States Court of Appeals, Sixth Circuit.
 Feb. 23, 1993.
As Amended May 28, 1993.
 
 Before KENNEDY, BOYCE F. MARTIN, Jr. and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Quaker Oats Company ("Quaker"), appeals the district court's order (1) affirming an arbitrator's award of severance pay to bargaining unit employees of the International Chemical Workers Union and Local 397, International Chemical Workers Union (collectively the "Union"), under a collective bargaining agreement (the "Agreement") between the parties; (2) awarding prejudgment interest at 11% per annum; and (3) awarding the Union attorney fees under § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). The arbitrator found that Quaker's sale of its Chemicals Division assets triggered liability for severance pay under the Agreement. We AFFIRM in part; VACATE in part; and REMAND.
 
 I.
 
 2
 Quaker operated a chemical division and chemical manufacturing facility in Memphis, Tennessee. The Union represents hourly employees at the Memphis facility. On May 1, 1981, Quaker and the Union entered into a collective bargaining agreement governing the terms and conditions of employment for the hourly workers at the Memphis facility. The contract expired on May 1, 1984.
 
 
 3
 Approximately three weeks before the expiration of the Agreement, Quaker sold nearly all of the chemical division to Pentech Corporation and its wholly-owned subsidiary, QO Chemicals (collectively referred to as "Pentech"). Over the remaining period of the Agreement (from April 11 to May 1) Pentech maintained the status quo: all workers previously employed by Quaker continued to work for Pentech; no alterations were made in the method of operation at the Memphis plant; and no employees were terminated, laid-off, or compensated at lower wages.
 
 
 4
 Shortly after the sale, the Union served a grievance on Quaker, requesting severance pay. The grievance was based on section 14.05 of the Agreement, which provides that "[a] Separation Allowance will be payable to any eligible employee as hereinafter defined ... whose employment is permanently terminated ... as a result of ... [a] [p]ermanent closing of the plant or other permanent reductions in the total number of employees covered by the Labor Agreement...." Specifically, the Union claimed that the asset sale caused a permanent termination of the employment relationship between its members and Quaker, thereby triggering liability under § 14.05 of the Agreement.
 
 
 5
 Quaker and the Union submitted the grievance to arbitration, as provided by the Agreement. The issue before the arbitrator was "[w]hether the Company [Quaker] violated the contract, and past authority, when it denied severance pay to bargaining unit employees on or about April 11, 1984, at the time of transfer of assets of the Memphis Chemical plant from the former employer, Quaker Oats, to the successor employer [Pentech]?" The arbitrator found that Quaker's asset sale violated the express terms of § 14.05 of the Agreement. In this respect, the arbitrator determined that the sale of assets to Pentech resulted in a termination of the employment relationship between Quaker and its employees, thus causing a permanent reduction of Quaker's work force. Based on this determination, the arbitrator concluded that "the employees met the criteria contained in § 14.05 of the Agreement to receive severance pay."[1]
 
 
 6
 Quaker filed this action under § 185(a) of the Labor Management Relations Act, 29 U.S.C. § 301(a), seeking to vacate the arbitrator's award. The Union counterclaimed to enforce the award. After reviewing cross-motions for summary judgment, the district court held that the arbitrator's award drew its essence from the agreement and granted summary judgment in favor of the Union. The judgment also included an award for prejudgment interest at 11% per annum and an award of $35,325.23 for attorney fees and costs under § 301(a) of the LMRA. This timely appeal followed.
 
 II.
 
 7
 We review a grant of summary judgment de novo. Faughender v. City of North Olmsted, Ohio, 927 F.2d 909, 911 (6th Cir.1991). Federal labor policy strongly favors enforcement of arbitration agreements: "[a]s long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate." United Paperworkers v. Misco, 484 U.S. 29, 36 (1987) (quotation omitted). Misco further provides that: (1) "[c]ourts [ ] do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts"; (2) "an arbitrator must find facts and the court may not reject those findings simply because it disagrees with them"; and (3) "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Id. at 38.
 
 A.
 
 8
 Quaker argues that the arbitrator ignored the plain language of § 14.05 of the Agreement governing liability for severance pay. It, therefore, contends that the arbitrator's award fails to draw its essence from the Agreement and must be vacated pursuant to Misco.
 
 
 9
 The arbitrator properly cited and clearly relied on § 14.05 of the Agreement in concluding that the employees were entitled to severance pay under the Agreement. Furthermore, given the evidence adduced at the arbitration hearing, we cannot say that the arbitrator was dispensing his own brand of industrial justice (though we may have reached a different decision based on a different interpretation of the Agreement and/or on factual findings to the contrary). Therefore, the award must stand.
 
 
 10
 Our decision is consistent with prior panel opinions in this circuit. See Lattimer-Stevens Co. v. United Steelworkers, 913 F.2d 1166 (6th Cir.1990) (holding that award drew its essence from the collective bargaining agreement, even though arbitrator awarded multiple annual pay "increases" based on language that required only a pay "increase"); Federated Department Stores, Inc. v. J.V.B. Indus., Inc., 894 F.2d 862 (6th Cir.1990) (holding, in part, that award drew its essence from collective bargaining agreement, even though it may have been based on a misinterpretation of the collective bargaining agreement).
 
 B.
 
 11
 Quaker also argues that the district court's award of prejudgment interest and of attorney fees was erroneous. Attorney fees are awardable under the LMRA if a party pursues or defends a lawsuit in bad faith or without justification. Knollwood Cemetery v. United Steelworkers, 789 F.2d 367, 369 (6th Cir.1986). Also, under the LMRA, an award of prejudgment interest rests in the sound discretion of the trial court. Bricklayers' Pension Trust Fund v. Taiariol, 671 F.2d 988, 989-90 (1982).
 
 
 12
 Although the arbitrator's award must stand on appeal, we conclude that the district court abused its discretion in awarding attorney fees and erred in setting the prejudgment interest rate at 11% per annum. Because the facts giving rise to this dispute lend themselves, fairly, to more than one interpretation (as noted above), we cannot say that Quaker pursued this lawsuit in bad faith or without justification. As a result, we do not believe that this is a proper case for awarding attorney fees.
 
 
 13
 Additionally, we are persuaded that the district court abused its discretion by awarding prejudgment interest at 11% per annum. As no federal statute or case mandates a specific prejudgment interest rate, prejudgment interest should have been awarded at a rate of 10% per annum under Tenn. Code Ann. § 47-14-123 (1988).
 
 III.
 
 14
 We AFFIRM the district court's order affirming the arbitrator's award of severance pay; VACATE the district court's award of attorney fees and prejudgment interest at 11% per annum; and REMAND with instructions to the district court to amend its judgment and award prejudgment interest at a rate of 10% per annum, as provided under Tennessee law.