**UTILITY WORKERS OF AMERICA, LOCAL 457, Plaintiff,**

v.

**OHIO EDISON CO., Defendant.**

**CASE NO. 5:02CV605.**

United States District Court, N.D. Ohio, Eastern Division.

Aug. 20, 2002.

factors to state prisoner habeas petitions un- der 28 U.S.C. § 2244(d)).

Robert S. Moore, Green Haines Sgambati, Youngstown, OH, for Plaintiff.

Gary W. Spring, James L. Cole, Roetzel & Andress, Akron, OH, for Defendant.

## OPINION

GWIN, District Judge.

Plaintiff Utility Workers of America, Local 457, ("UWA"), on behalf of twenty-eight Instrument and Testing, and Electrical Maintenance workers ("Workers"), moves this Court to modify an arbitration award. An arbitrator gave the award in a dispute over the interpretation of its collective bargaining agreement with Defendant Ohio Edison Co. ("Ohio Edison"). Ohio Edison employs the Workers at its W.H. Sammis Plant. Because this Court affords great deference to contractually agreed upon arbitration, this Court refuses to modify the arbitration award.

### I. Background

In March 1999, Ohio Edison changed the work schedule of the Workers from 12-hour scheduled shifts to rotating eight-hour shifts. The rotating eight-hour shifts provided seven-day, 24-hour plant coverage. On April 2, 1999, the UWA filed a grievance claiming that Ohio Edison had violated the parties' Collective Bargaining Agreement ("Agreement"). UWA's grievance said that, after the schedule change, Ohio Edison treated the Workers as "shift" workers and not "scheduled" workers. "Shift" employees work jobs that demand continuous, 24-hour attention. "Shift" employees eat their meals at their job location and relieve each other "on the job." "Scheduled" employees are employees who do not work on a "shift" job.

The UWA believes Ohio Edison deprived the Workers the "20–Sunday" limitation and the "five-hour clause" benefits afforded to "scheduled" workers under the Agreement when Ohio Edison changed the work schedule in 1999. The "20–Sunday" limitation provides that "scheduled" workers may not work more than 20 Sundays per calendar year. However, an asterisked exception exists in the Agreement— "except when assigned to shift work." The "20–Sunday" provision thus only applies to "scheduled" employees.

The "five-hour clause" provides that "scheduled" employees who work six or more hours during the eight-hour period before their starting time shall be entitled either a rest period of five-hours without pay before returning to work or double-time compensation from when the employ-

ee was scheduled to begin work until the time the employee is released. "Shift" employees receive neither the "20–Sunday" benefit nor the "five-hour clause" benefit.

After the Union filed a grievance, the parties proceeded through the grievance mechanism until arbitration was demanded. The parties arbitrated the dispute, and on August 3, 2001, a neutral arbitrator issued a decision. In his decision, the arbitrator found that, "While much of the testimony and argument was focused on the differences between shift and scheduled employees, this dispute may be resolved by focusing specifically on the two contractual benefits Grievant alleges he is being denied." As for the "20–Sunday" limitation, the arbitrator found the following concerning the "except when assigned to shift work" provision:

[The "except when assigned to shift work" provision] would also suggest that, if the job assignment or classification was assigned to shift work, the limitation would not apply. It is significant, the arbitrator believes, that the asterisked exception does not relate to scheduled or shift employees but, rather, to the listed classification being assigned to shift work. The Union has indicated that it is not objecting to the assignment to shifts but to scheduled employees being treated as shift employees. That does not seem to be an issue here because subsection (B) does not mention scheduled employees but does specifically list the job assignments covered by the limitation. But, even more specifically, it provides that the scheduling limitation does not apply 'when assigned to shift work.' That is what occurred here and the grievance will be denied to the extent it is seeking a limitation on the number of Sundays Grievant can work in a year.

The arbitrator then turned to the five-hour clause. After finding that the Agreement treated the Workers as scheduled employees before the schedule change, the arbitrator stated:

The question is whether such assignment removes from that employee the characteristics of being a scheduled employee. The Company essentially argues that scheduling an employee on a rotating shift schedule makes that employee a shift worker but the arbitrator disagrees with that conclusion. The Company can decide, for operation and maintenance purposes, to schedule all employees on a rotating shift schedule and that is specifically contemplated in the Agreement as noted in the analysis above. And, because such an assignment is specifically contemplated in the agreement, it must be concluded that the parties did not intend that such an assignment would change an employee's status. Stated another way, it is the type of job held by the employee which results in the appropriate label rather than the schedule being worked.

The arbitrator concluded that the Workers would remain "scheduled employee[s] and, as such, entitled to the benefit of the five-hour clause if the situation warranted. Because of the rotating shift schedule, it is suspected that the occasions for implementation of the five-hour benefit would be rare." The arbitrator then directed the parties to confer to determine if they could agree on an appropriate remedy concerning the "five-hour clause." Ohio Edison's arbitrator dissented to the arbitration award. UWA's arbitrator concurred with the arbitration award's "five-hour clause" decision and dissented to the award's "20–Sunday" limitation decision.

After conferring, the UWA and Ohio Edison were unable to agree on a remedy. The arbitrator asked for each party to

submit statements that outlined their positions. In its position statement, the UWA argued that Ohio Edison should pay the benefits of the "five-hour clause" to all Workers regardless of what shift they worked. In contrast, Ohio Edison argued that the "five-hour clause" remedy applied only to employees that worked overtime prior to a 7:00 A.M. scheduled start time, thereby having their sleeping routine interrupted. Therefore, Ohio Edison argued that the "five-hour clause" should only apply to Workers who worked a day shift.

The UWA also argued that since Ohio Edison dissented to the arbitration award, both parties had dissented to the arbitrator's "20–Sunday" ruling. Therefore, the UWA claimed that the arbitrator's ruling denying the "20–Sunday" grievance was overruled and UWA's grievance was accordingly sustained. Responding, Ohio Edison argued that it had dissented to the arbitrator's finding that the Workers did not become "shift workers" when assigned to shifts. Ohio Edison maintained that it did not limit its own rights to schedule Sunday work by dissenting.

On December 14, 2001, the arbitrator decided the remedy issue. The arbitrator held that the "20–Sunday" ruling was effective and that UWA's dissent was "without merit." The arbitrator held that his ruling was clear "despite the Company's arbitrator's apparent dissent without explanation to the whole award."

Regarding the "five-hour clause," the arbitrator held:

> At the time the benefit was negotiated, Grievants were scheduled on, and worked, the daylight shift and the benefit was applied only when the circumstances calling for the application of the benefit occurred in relation to that shift. The Union believes it should now be applied for all shifts worked by Grievants but that clearly was not the intent when the benefit was negotiated and the

Arbitrator did not intend to extend the benefit beyond the manner in which it was applied before this grievance was filed. The Company's position on this point is correct.

The arbitrator accordingly held that the "five-hour clause" only applied to Workers scheduled to work on the day shift. In other words, the "five-hour clause" would only be interpreted to apply to workers losing typical hours of sleep.

In January 2002, UWA filed a "Brief on Remedy." UWA asked the arbitrator to complete his award and issue a remedy. UWA also set forth its arguments regarding the "five-hour clause." Ohio Edison responded. On February 16, 2002, the arbitrator provided his "final remarks." The arbitrator reiterated his holding that the "five-hour clause" only applies to Workers scheduled to work the day shift. The arbitrator also issued a cease and desist order.

On March 29, 2002, UWA initiated this action seeking to modify the arbitration award regarding the "five-hour clause" and to "enforce" the arbitration award regarding the "20–Sunday" provision.

## II. Legal Standard

### A. Arbitration Review

"Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d). Therefore, "the deference that federal courts must give to the settlement of a labor dispute by an arbitrator is substantial." *DBM Technologies Inc. v. Local 227*, 257 F.3d 651, 656 (6th Cir.2001). The United States Court of Appeals for the Sixth Circuit has called review over such arbitration awards "one of the narrowest standards of judicial review in all of Amer-

ican jurisprudence." *Id.* (internal quotation omitted). In *DBM,* the Sixth Circuit held that:

> when a collective bargaining agreement provides for a private mechanism of arbitrating a dispute, "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them."

*Id. quoting United Paperworkers Int'l Union v. Misco,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

### B. Arbitration Vacation

Based on the deference given to an arbitrator's award, the Sixth Circuit has ruled that "if an arbitrator's award draws its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of industrial justice, [the federal courts] must uphold the award." *Id.* (internal quotations omitted). Therefore, an arbitrator's award must fail to draw its essence for the bargaining agreement for a court to disrupt that award. The Sixth Circuit has "declared the four ways in which an arbitrator's award might fail to draw its essence from the agreement occur when:

(1) an award conflicts with express terms of the collective bargaining agreement,

(2) an award imposes additional requirements that are not expressly provided in the agreement,

(3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and

(4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement."

*Id.* (internal quotations omitted).

### C. Arbitration Modification

The Arbitration Act, 9 U.S.C. § 1, *et seq.,* provides the statutory basis for a district court's review of an arbitrational award. Section 11 of that act restrains courts' power to modify an arbitration award. *See NCR Corp. v. Sac–Co., Inc.,* 43 F.3d 1076, 1080 (6th Cir.1995); *Federated Department Stores, Inc. v. JVB Indus., Inc.,* 894 F.2d 862, 865 (6th Cir.1990). When wishing to modify an arbitration award, a party must not only show that the award failed to draw its essence from the bargaining agreement, but must also meet the statutory requirement of 9 U.S.C. § 11. The Sixth Circuit has specifically held that "the Court's power to modify an arbitration award is confined to the grounds specified in [9 U.S.C.] Section 11." *NCR,* 43 F.3d at 1080.

Pursuant to 9 U.S.C. § 11, a federal court may modify an arbitration award only:

(A) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any personal thing or property referred to in the award.

(B) The arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(C) Where the award is imperfect in matter of form not affecting the merits of the controversy. The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

*Id.* The burden on a party claiming, pursuant to 9 U.S.C. § 11(B), that an arbitrator awarded upon a matter not submitted to

them is high. "Given the strong federal policy in favor of enforcing arbitration agreements, the burden of proving that the arbitrators exceeded their powers is very great." *Klepper v. Osborne*, 902 F.2d 33 (6th Cir.1990) *quoting Federated*, 894 F.2d at 866.

## III. Analysis

### A. Twenty–Sunday Limitation

 The UWA asks the Court to "enforce" the arbitration award sustaining its grievance concerning the "20–Sunday" limitation. However, UWA's claim that this Court should "enforce" the arbitration ruling's "20–Sunday" limitation award lack support. Originally, Ohio Edison dissented to the arbitrator's whole decision without explanation. Later, the arbitrator let Ohio Edison clarify its dissent in Ohio Edison's position statement. In its position statement, Ohio Edison represented that it dissented to the arbitrator's conclusion that the Workers be considered "scheduled" employees even when working a "shift" schedule. Ohio Edison represented that it had not dissented to the arbitrator's ruling concerning the "20–Sunday" limitation. Ohio Edison would have no reason to dissent to that ruling for the arbitrator ruled in favor of Ohio Edison.

UWA does not dispute that Ohio Edison sought precisely the same "20–Sunday" limitation arbitration award that the arbitrator granted. While Ohio Edison may have made a clerical mistake by not explaining its dissent in its original objection, it would be illogical for Ohio Edison to have dissented from the arbitration rulings that were specifically in its favor. After reviewing Ohio Edison's position statement, the arbitrator found that the "decision [regarding the "20–Sunday" limitation] is clear and . . . arguing that the Company dissented on this point is without merit."

The Court agrees with the arbitrator. By the arbitrator's December 14, 2001, ruling, Ohio Edison notified the arbitrator of its position regarding its earlier dissent. When it submitted its position statement, Ohio Edison did not dissent to the "20–Sunday" ruling made in its favor. Ohio Edison does not dissent to that award now. Ohio Edison's clarification of its dissent and the arbitrator's reliance on that clarification is sufficient to show that Ohio Edison's original dissent was not a dissent to the part of the award that was specifically in its favor.

### B. Five–Hour Clause

The UWA asks the Court to vacate the arbitrator's "five-hour clause" remedy and not the whole award. The UWA admits that vacating an award in part is synonymous with modifying an award. Therefore, the UWA is asking the Court to modify the arbitrator's award. However, UWA has not met the Sixth Circuit's standard for either modifying or vacating an arbitration award.

Two bases for modification under 9 U.S.C. § 11 can be easily dismissed. Subsection (A) is not applicable because UWA does not allege that there is a "material miscalculation of figures" or "material mistake in the description of any personal thing or property" in the award. The calculation of the award figures, and description of things and property are not at issue here. Subsection (C) is also inapplicable because UWA seeks to modify the award in a way that would necessarily affect the merits of the controversy. UWA is trying to modify the remedy to gain a substantial increase in its back pay award and increase the Workers future benefits under the Agreement.[1]

---

1. If the Agreement has not already been mod- ified.

Therefore, if this Court modified the award, the award would have to be modified under the terms of 9 U.S.C. § 11(B). Section 11(B) provides for modification when the arbitrators "have awarded upon a matter not submitted to them." However, the parties submitted the issue of proper remedy concerning the "five-hour clause" to the arbitrator when they submitted their position statements. The UWA addressed the issue to the arbitrator in its position statement and in its "Brief on Remedy." Since the parties submitted the "five-hour clause" remedy to the arbitrator, this Court may not modify the arbitration award pursuant to 9 U.S.C. § 11(B).

The UWA asks this Court to modify the arbitration award. Seeking modification, the UWA must show one of the grounds described in 9 U.S.C. § 11. It fails to do so.

But even if the UWA were asking the Court to vacate the arbitration award, its efforts fail. The award survives the Sixth Circuit's general "drawing its essence" standard for arbitration review. The award does not conflict with the express terms of the Agreement nor is it without rational support from the Agreement. It does not impose additional requirements that the Agreement does not provide for. The arbitrator based the award expressly upon the terms of the Agreement, and the award was not based on general considerations of fairness and equity. In the December 14 ruling, the arbitrator found that applying the "five-hour clause" to all shifts "was not the intent when the benefit was negotiated...." The arbitrator's ruling was based on the Agreement at the time the parties negotiated it. As this Court must accept both the arbitrator's findings of fact and his interpretation of the contract, the arbitrator's award must stand.

## IV. Conclusion

For the foregoing reasons, this Court hereby denies UWA's prayers for relief.

IT IS SO ORDERED.