**M & C CORPORATION, a Michigan corporation, d/b/a Connelly Company, Plaintiff–Appellee,**

v.

**ERWIN BEHR GmbH & CO., KG, a foreign corporation, Defendant–Appellant.**

No. 95–1390.

United States Court of Appeals, Sixth Circuit.

Argued May 14, 1996.

Decided July 3, 1996.

Russ E. Boltz (argued), John C. Louisell (briefed), Cross & Wrock, Detroit, MI, for Plaintiff-Appellee.

Richard D. Bisio (argued and briefed), Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Defendant-Appellant.

Before: NORRIS and DAUGHTREY, Circuit Judges; HILLMAN, District Judge.*

DAUGHTREY, Circuit Judge.

This appeal involves a challenge by Erwin Behr GmbH & Co., KG, to a district court order confirming an international arbitration award. Behr contends that the arbitrator exceeded his authority by assessing damages that were outside the scope of the arbitration proceeding's terms of reference. Behr also insists that because the contested damage award is in manifest disregard of the law and is based upon a miscalculation of fact, it must be set side under the Federal Arbitration Act. For the reasons set out below, we disagree and we therefore affirm.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Behr, a German limited liability entity, entered into a contract on March 18, 1985, with M & C Corporation, a Michigan corporation doing business as the Connelly Company. Pursuant to the agreement, Connelly was to serve as the exclusive sales agent for Behr in the United States and Canada for a period of at least five years for the sale of wood interior panels for luxury automobiles. In addition, the contract specified that the "agreement shall be interpreted with and governed by the laws of the State of Michigan," and that "[a]ll disputes arising in connection with the present contract shall be finally settled under the Rules of the Court of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules."

In 1991, Behr announced, in accordance with the provisions of the contract, that the agreement would be terminated. When Behr failed to forward to Connelly the commissions earned by the Michigan company for some of the sales and client development work performed, however, Connelly filed suit in federal district court seeking damages for breach of contract, improper termination of contract, and tortious interference with contractual relations. Connelly named as defendants Behr, Heinz Etzel, the managing director of the corporation, and two Behr principals, Michel Karkour and Sami Sarkis. Only Behr and Etzel were served with process, however. The district court stayed any judicial proceedings and ordered the parties to submit the dispute to arbitration as required by the contract.

Pursuant to the Rules of the Court of Arbitration of the International Chamber of Commerce, a British arbitrator was then assigned to the case and London, England, was designated as the neutral site of the proceedings. On March 1, 1994, after more than one year of submissions of documentation, arguments, and hearings, the arbitrator issued 11 awards, only two of which are still contested by the parties. One of those contested matters involves the arbitrator's award granting Connelly $683,761 in damages pursuant to a Michigan statute assessing against a defendant an amount equal to two times the value

---

* The Honorable Douglas W. Hillman, United States District Judge for the Western District of Michigan, sitting by designation.

of commissions due but intentionally not paid to a sales representative. MCL § 600.2961(5)(b). Behr also contests the arbitrator's decision requiring it to submit to Connelly $335,793.47 in legal fees, costs, and expenses. Not contested by any party, however, were the findings that the arbitrator had no jurisdiction over the claim against Etzel and that Connelly should be awarded $956,768 in damages and interest payments for commissions wrongfully withheld by Behr.

Following release of the arbitrator's decision, Connelly petitioned the federal district court pursuant to 9 U.S.C. § 207 for confirmation of the entire arbitration award in accordance with the provisions of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, known simply as the New York Convention. *See* 9 U.S.C. § 201. Behr then filed a motion to vacate the award in part, contending that the statutory damages granted pursuant to M.C.L. § 600.2961 were improper and that the award of costs, fees, and expenses should be reduced to reflect the resulting lesser damage amount. The magistrate judge to whom the motions were assigned first recommended that those portions of the award to which there was no objection be confirmed. The district court adopted that recommendation and entered partial judgment on August 15, 1994. Four months later, the magistrate judge also recommended that Behr's motion to vacate the award in part be denied and that Connelly's motion to confirm the entire award be granted. The district court also concurred in that recommendation and entered a second partial judgment confirming the disputed portions of the arbitrator's awards. From that judgment, Behr now appeals.

## II. *FEDERAL COURT JURISDICTION*

■ As a preliminary matter, Connelly argues that the federal courts have no jurisdiction to review the arbitrator's awards because the parties agreed that all disputes regarding their contract would be "finally settled" by arbitration. Furthermore, Connelly contends that the arbitration rules of the International Chamber of Commerce by which the parties agreed to be governed also provide that "[t]he arbitral award shall be final" and that the parties are deemed "to have waived their right to any form of appeal insofar as such waiver can validly be made." ICC Rules of Conciliation and Arbitration, Art. 24.

■ As noted by Behr, however, strict adherence to the principle of finality of arbitral awards would insulate such judgments from judicial review even in cases involving fraud, procedural irregularities, or exertion of improper influences upon arbitrators. In order to ensure that necessary safeguards are not foreclosed, the Second Circuit has recognized that "[t]he terms 'final' and 'binding' [in arbitration agreements] merely reflect a contractual intent that the issues joined and resolved in the arbitration may not be tried de novo in any court." *Iran Aircraft Industries v. Avco Corp.*, 980 F.2d 141, 145 (2d Cir.1992). By so holding, the Second Circuit also provided that the defenses to enforcement of awards described in the New York Convention itself would remain available to parties who are unsuccessful in arbitration proceedings. *Id.* We concur in this interpretation of the arbitration rules.

Simply because all judicial review of arbitral awards is not foreclosed does not mean, however, that Behr may petition the federal courts of this country for an order *vacating* an award made in a foreign nation. On December 29, 1970, the New York Convention was "entered into force" for the United States and thus became the applicable law for the "recognition and enforcement of arbitral awards in the territory of a [national] State other than the [national] State where the recognition and enforcement of such awards are sought." New York Convention, Art. I(1). Pursuant to the Convention, an application for setting aside or suspending an arbitral award may be made only to a "competent authority of the country in which, or under the law of which, that award was made." New York Convention, Art. VI (referencing Art. V(1)(e)).

■ Although the arbitral award at issue in this appeal was clearly not made within the United States, Behr contends that it may

seek to vacate that award here because the parties agreed to dissolve their dispute pursuant to Michigan law, thus ensuring that the award was made "under the law of [the United States]." In *International Standard Electric Corp. v. Bridas Sociedad Anonima Petrolera, Industrial Y Comercial,* 745 F.Supp. 172, 178 (S.D.N.Y.1990), however, the court held:

> [T]he contested language in Article V(1)(e) of the Convention, "... the competent authority of the country under the law of which, [the] award was made" refers exclusively to procedural and not substantive law, and more precisely, to the regimen or scheme of arbitral procedural law under which the arbitration was conducted, and not the substantive law of contract which was applied in the case.

■ We conclude that the result reached by the district court in *International Standard Electric Corp.* is the correct one. Resorting to the courts of the nation supplying the substantive law for the dispute does nothing to enhance the underlying principles of international arbitration because, under the terms of the New York Convention itself, judicial review of such an award is extremely limited and extends only to procedural aspects of the determination. Moreover, as recognized by the Supreme Court in *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 9, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972), "[w]e cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts."

From a conclusion that Behr may not seek to *vacate* the arbitral award in the district court, Connelly engages in an extrapolation exercise to argue that Behr may not raise *any* objections to the arbitrator's decision in the courts of the United States. Such a restriction on access to judicial oversight is, however, as unwarranted as is a policy of allowing the courts to re-examine the very issues that the parties to the contract agreed to remove from the judicial arena and commit to the discretion of the arbitrator. Article V of the New York Convention, in fact, provides that enforcement and recognition of a foreign arbitral award may be refused upon proof of certain deficiencies proven by a party to an arbitration proceeding. Pursuant to Article V(1)(a)–(e), enforcement may be denied upon a showing that:

> (a) The parties to the agreement ... were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contain[s] decisions on matters submitted to arbitration may be recognized and enforced; or

> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

Furthermore, recognition and enforcement of an award may be refused if the subject matter of the conflict is not capable of settlement by arbitration in the country in which enforcement is sought, or if recognition and enforcement of the award would violate the public policy of that country. New York Convention, Art. V(2)(a)–(b).

Section 207 of Title 9 of the United States Code clearly bestows upon the district court the authority to entertain Connelly's motion to *confirm* the arbitral award. Similarly, because that same statutory provision and Article V of the New York Convention also

recognize a party's right to *object* to confirmation *on specified grounds,* Behr's challenge to the award, on such limited bases, is also within the jurisdiction of the district court. Article VI of the New York Convention, however, severely restricts a party in choosing a venue in which to file motions *to set aside or suspend* a foreign arbitral award. We hold, as did the district court in *International Standard Electric Corp.,* that such a motion to vacate may be heard only in the courts of the country where the arbitration occurred or in the courts of any country whose *procedural* law was specifically invoked in the contract calling for arbitration of contractual disputes.

### III. *SCOPE OF THE ARBITRATION'S TERMS OF REFERENCE CONCERNING DAMAGE AWARDS*

█ Part of the arbitrator's award in this dispute included damages assessed pursuant to M.C.L. § § 600.2961. That statute provides, in relevant part:

A principal who fails to comply with this section is liable to the sales representative for both of the following:

(a) Actual damages caused by the failure to pay the commissions when due.

(b) If the principal is found to have intentionally failed to pay the commission when due, an amount equal to 2 times the amount of commissions due but not paid as required by this section or $100,000.00, whichever is less.

MCL § 600.2961(5). Before this court, Behr now contests the appropriateness of such a double damage award in this case.

As noted above, a party to foreign arbitration may successfully challenge confirmation of an award if any part of that award does not fall within the terms of submission to the arbitration. New York Convention, Art. V(1)(c). In its objections to confirmation of the arbitral award in this matter, Behr contests the statutory damages granted to Connelly pursuant to the provisions of M.C.L. § § 600.2961 for just such a reason.

Without question, the terms of reference prepared for the arbitration did not specifi-

cally mention § 600.2961. Behr insists that because that challenged statutory provision calls for what it characterizes as "penalty" payments by a "guilty party" in a contractual dispute, such a specific reference to the provision should be required in order to place the parties on notice of the potential application of the statute's alternative "theory of liability." On the other hand, Connelly contends that the damages referenced in the statutory provision are compensatory in nature and that the request for such payment is thus included by implication within the broad categories of relief mentioned in the arbitrator's terms of reference.

In those terms of reference defining the issues to be decided in the arbitration, the parties agreed that Connelly sought from Behr specified, estimated monetary damages, as well as "such other relief as is within the authority of the Arbitrator as may be justified in this matter." Furthermore, the parties concurred in the wording of the issues to be determined during the proceeding, including the issue calling upon the arbitrator to decide "[a]ny other issues which may be found relevant by the Arbitrator arising out of the Claims."

Both in their contract with each other and in the terms of reference, Behr and Connelly also agreed that any dispute involving their business relationship would be resolved according to the laws of the State of Michigan. At the time of the preparation of the terms of reference for the arbitration in August, 1992, that applicable law included M.C.L. § § 600.2961(5), which had been in effect in Michigan for more than six weeks.[1] Consequently, Behr knew, or should have known, of the potential relevance of that statutory provision. Moreover, in a filing submitted on December 4, 1992, Connelly specifically mentioned the statute and its application to the upcoming arbitration proceedings. Behr made no reply to that claim in its response to the filing on January 28, 1993. In fact, although Behr asserted that the statute's provisions were not applicable to the dispute in a March 11, 1993, submission, it was not until May 17, 1993, that the company claimed that

---

1. MCL § 600.2961 became effective immediately upon approval on June 29, 1992.

reliance upon the provisions of the statute would be outside the terms of reference.

■ The application of M.C.L. § § 600.2961 to this dispute does not involve assertion of a new cause of action not contemplated by the parties in the terms of reference. As noted by the arbitrator in his award, the statute is compensatory in nature and merely designates another measure of damages for the same breach of contract action against Behr. The arbitrator's examination of the legislative history of the provision revealed that the statute was indeed an attempt by Michigan lawmakers to compensate sales agents for goodwill and other assets lost that would be difficult to quantify in a dispute. Thus, rather than requiring the harmed agents to resort to costly litigation to provide the detailed accounting necessary to ascertain all relevant damages, the legislature simply chose to assess those additional damages by requiring a principal who intentionally fails to pay commissions due to remit two times that amount to the agent.

Because the damages are considered compensatory, the arbitrator correctly concluded that payment of such compensation pursuant to M.C.L. § § 600.2961(5)(b) was envisioned by the terms of reference. Those terms broadly state that Connelly "has suffered monetary damages as a result of [Behr's] failures [to pay the full amount of commissions due]." Terms of Reference, Article III(A)(c). Although Connelly does then seek monetary damages estimated to be $750,000, that request specifies that the damage amount represents only the actual amount of the "unpaid commissions to Plaintiff, without deduction or offset." The terms of reference also explicitly provide that Connelly seeks "other relief" that is available under the applicable law to compensate it for losses "as a result of [Behr's] failures [to pay the full amount of commissions due]." We conclude that the M.C.L. § § 600.2961 damage award thus was within the scope of the arbitrator's terms of reference, that it did not raise a new theory of liability, and that it did not impose a new evidentiary requirement upon Behr.

A similar conclusion was reached by the Second Circuit in the analogous situation presented in *Carte Blanche (Singapore) Pte.,*

*Ltd. v. Carte Blanche International, Ltd.,* 888 F.2d 260 (2d Cir.1989). In that case, the terms of reference to the arbitration panel included an issue which stated, "Has C[arte] B[lanche] S[ingapore] established a claim for damages, and, if so, in what amount?" *Id.* at 266. Due to the open-ended nature of the language of the inquiry and the fact that no restriction was set on the theories of damages that could be asserted, the court determined that a subsequent attempt by the plaintiff to file "an amended damages pleading" seeking an additional $3.5 million in consequential damages was encompassed by the terms of reference. *Id.* at 266–67.

In the present case, Connelly sought, through the terms of reference, to receive both the actual amount of the commissions due to it from Behr and any other compensatory relief to which it would be entitled under the applicable laws of the State of Michigan. The award of damages pursuant to M.C.L. § § 600.2961 was, therefore, contemplated by the parties and was within the terms of reference defining the arbitrator's authority.

## IV. *ALLEGED MANIFEST DISREGARD OF THE LAW AND MISCALCULATION OF FACT*

■ In a final challenge to the award, Behr contends that reference to the review provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1–16, should lead this court to conclude that the arbitrator either exhibited a manifest disregard for the law or else miscalculated the facts in arriving at the amount of damages owed to Connelly. Specifically, Behr asserts that the arbitrator failed to give effect to the 45–day grace period for paying sales representatives' commissions found in the applicable Michigan law and that, as a result, Connelly's petition for confirmation should be denied.

■ Pursuant to the provisions of 9 U.S.C. § 11, a federal court may indeed modify or correct an arbitration award "[w]here there was an evident material miscalculation of figures...." Furthermore, although not mentioned in the statute itself, an award may be vacated under the Federal Arbitration Act if the arbitrator exhibits a "manifest disre-

gard of the law." *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953), *overruled on other grounds by Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *Carte Blanche (Singapore),* 888 F.2d at 265. In order to constitute a "manifest disregard of the law," however, the error under review must be "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986).

Behr now attempts to impose those Federal Arbitration Act grounds for granting relief from an arbitral award upon the court in this matter. Although the New York Convention, and not the Federal Arbitration Act, usually applies to federal court proceedings to recognize or enforce arbitration awards made in *other* nations, 9 U.S.C. § 208 provides that the Federal Arbitration Act may apply to actions brought pursuant to the New York Convention "to the extent that [the Federal Arbitration Act] is not in conflict with [9 U.S.C. §§ 201–208] or the Convention as ratified by the United States."

Unfortunately for Behr, however, such a conflict does indeed exist. For example, 9 U.S.C. § 207 explicitly requires that a federal court "*shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." (Emphasis added.) In turn, Article V of the Convention lists the exclusive grounds justifying refusal to recognize an arbitral award. Those grounds, set out in Part II, above, do not include miscalculations of fact or manifest disregard of the law.[2] *International Standard Electrical Corp.,* 745 F.Supp. at 181. This court is, therefore, without jurisdiction to engage in the type of review requested by Behr.[3]

For the reasons set out above, we **AFFIRM** the judgment of the district court confirming the arbitral award in this case.

---

**2.** Nor can review for a "manifest disregard of the law" be pigeonholed into the "violation of public policy" basis for refusal to confirm an award contained in Article V(2)(b) of the New York Convention. The federal courts that have addressed the public policy limitation have concluded that it "is to be construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and justice." *Fotochrome, Inc. v. Copal Co., Ltd.,* 517 F.2d 512, 516 (2d Cir.1975). Whatever may be meant by the manifest disregard doctrine applicable in domestic arbitration cases, it is clear that such a doctrine does not rise to the level of a violation of public policy that is necessary to deny confirmation of a foreign arbitral award. *See, e.g., International Standard Electric Corp.,* 745 F.Supp. at 181.

**3.** Even if this court were to review the arbitral award under Federal Arbitration Act standards, it appears that no manifest disregard of the law can be demonstrated. For the reasons detailed by the magistrate judge in his report and recommendation, any mistake made by the arbitrator in applying M.C.L. § § 600.2961 was more likely the result of inadvertence, rather than a conscious decision to ignore the relevant law.