**CRYE–LEIKE, INC., et al., Plaintiffs,**

**v.**

**Darren THOMAS, et al., Defendants.**

**No. 01–2130 D/V (M1).**

United States District Court,
W.D. Tennessee,
Western Division.

April 10, 2002.

Oscar C. Carr, III, Esq., Larry Montgomery, Esq., Glankler Brown, PLLC, Memphis, for Crye–Leike, Inc., Crye–Leike, Inc., as Plan Sponsor of the Crye–Leike, Inc. Employee Welfare Benefit Plan, Crye–Leike, Inc., Employee Welfare Benefit Plan, plaintiffs.

David M. Donovan, Watts & Donovan, P.A., Little Rock, for Darren Thomas, Francois Verkaeren, Merrion Reinsurance Company, Ltd., defendants.

## ORDER DENYING PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT AND TO MODIFY OR TO VACATE, IN PART, ARBITRATION AWARD

DONALD, District Judge.

Before the Court is Plaintiffs' Motion to Alter or Amend Judgment and to Modify or to Vacate, in part, Arbitration Award. Plaintiffs' motion and memorandum of law were filed on February 27, 2002. Defendants responded on March 12, 2002. For the following reasons, the Court DENIES Plaintiffs' motion.

### I. Background

This case concerns the agreement between Defendant Merrion Reinsurance Company, Ltd. ("Merrion") and Plaintiffs to cover health care benefits payable to Plaintiff Crye–Leike's employees (the "Agreement"). Plaintiffs allege that the Agreement obligated Defendant Merrion to pay 100% of the employee benefits over a deductible. Plaintiffs assert that Defendant Merrion has breached the Agreement by failing to pay claims within three days of submission, refusing to pay some claims at all, and unilaterally repudiating and attempting to terminate the Agreement without providing sixty days notice to Plaintiff Crye–Leike.

Plaintiffs made a demand for arbitration, pursuant to the Agreement, on March 3, 1999. The arbitration was conducted on March 19–21, 2001. The panel of arbitrators issued their decision on October 2, 2001, and that decision was filed with the Court on October 9, 2001. Plaintiffs then moved the arbitrators to interpret and correct their October 2 decision.

On December 7, 2001, the Court denied Plaintiffs' motion for summary judgment without prejudice, and granted Plaintiffs' motion to amend the scheduling order pending the issuance of the final arbitration award. On December 3, 2001, the American Arbitration Association affirmed the October 2 decision in all respects except that it adjusted the percentage of compensation payable by Plaintiff Crye–Leike for the arbitrator's fees and expenses. That decision was filed with the Court on December 10, 2001.

On February 15, 2002, the Court issued an order granting Defendants' motion for summary judgment, denying Plaintiffs' motion to require Defendants to post a bond, and dismissing the case. The Court granted Defendants' summary judgment motion because the pivotal factual and legal issues underlying all of Plaintiffs' claims were resolved by the final arbitration award, and the Court is required to give estoppel effect to issues actually litigated in an arbitration proceeding between the same parties. In accordance with that order, judgment for Defendants was entered on February 22, 2002.

### II. Motion to Alter or Amend Judgment

Plaintiffs ask the Court, pursuant to Federal Rules of Civil Procedure 59 and 60, to alter or amend the judgment it entered on February 22, 2002.[1] Rule 60(b) permits a court to relieve a party from a final judgment, order, or proceeding for certain enumerated reasons. The enumerated reasons relevant to Plaintiffs' motion are "fraud ... misrepresentation, or other misconduct of an adverse party," and "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(3), (6).

The basis for Plaintiffs' motion is that Defendants "engaged in fraud and other misconduct in the arbitration proceeding and the arbitration panel manifestly disre-

---

**1.** The Court notes that Rule 59 is inapplicable here because it only applies to the amendment of judgments entered after trial. There was no trial in this case.

garded the law applicable to the proceeding and manifestly failed to apply the law to the facts." (Pl.'s Mem. in Supp. of Their Mot. to Alter or Amend Judg. and to Modify or to Vacate, in part, Arb. Award at 2.) Plaintiffs argue that the Court should amend the judgment because it should modify or vacate the arbitration award.

Plaintiffs' argument makes sense. Summary judgment was granted to Defendants because the Court was estopped from relitigating the issues decided by the arbitration panel. If the Court were to grant Plaintiffs' motion to modify or vacate the arbitration award, it would also have to amend its own judgment, which was premised upon the finality and validity of the arbitration award. However, because the Court declines to disturb the arbitration award, there is no reason for the Court to disturb its own judgment. The Court, therefore, DENIES Plaintiffs' motion to amend the judgment in this case.

## III. Motion to Modify or Vacate, in part, Arbitration Award

Plaintiff moves the Court to modify or vacate the final arbitration award. The Federal Arbitration Act (the "FAA") allows a federal court in and for the district wherein an award was made to vacate the award upon the application of any party to the arbitration, when any of the following four grounds are asserted:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

The FAA allows the same court to modify or correct an award upon the application of any party to the arbitration when any of the following grounds are asserted:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy. The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11.

These are the only grounds for vacatur or modification explicitly made available by the FAA. There is some confusion as to whether there is an additional, non-statutory ground for vacatur available in the Sixth Circuit. There is similar confusion among the circuit courts of appeals.[2]

---

**2.** Only the Fourth Circuit has "unequivocally rejected the nonstatutory grounds for vacatur." Stephen L. Hayford, *Law in Disarray: Judicial Standards for Vacatur of Commercial Arbitration Awards*, 30 GALR 731, 764 (1996). "Four circuit courts of appeals can be described as being in a state of extreme confusion with regard to the non-statutory grounds for vacatur: the Sixth, Ninth, Fifth, and Seventh." *Id.* The remaining circuit courts of

In *Corey v. New York Stock Exch.*, the Sixth Circuit held that "[t]he federal Arbitration Act provides the exclusive remedy for challenging an award on the grounds raised by [the movant.]" 691 F.2d 1205, 1212 (6th Cir.1982). In *Corey,* the Sixth Circuit was not called upon to determine whether any grounds for vacatur, other than those set forth in the FAA, were available to the parties. Therefore, this case alone can not be cited as authority for the proposition that the Sixth Circuit does not recognize any non-statutory grounds for vacatur.

■ In a 2000 decision, however, the Sixth Circuit seemed to suggest that its decision in *Corey* does limit the grounds for challenging an arbitration award to those set forth in the FAA. "Once an arbitration is conducted under a valid arbitration contract, the FAA 'provides the exclusive remedy for challenging acts that taint an arbitration award'." *Decker v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 205 F.3d 906, 909 (6th Cir.2000) (citing *Corey,* 691 F.2d at 1211). Therefore, in its most recent pronouncement on this issue, the Sixth Circuit indicated that district courts should vacate arbitration awards only on the grounds set forth in the FAA.

In three earlier decisions, though, the Sixth Circuit recognized that "although not mentioned in the statute itself, an award may be vacated under the Federal Arbitration Act if the arbitrator exhibits a 'manifest disregard of the law.'" *M & C Corporation v. Erwin Behr GmbH & Co., KG,* 87 F.3d 844, 850–51 (6th Cir.1996) (citing *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953), overruled on other grounds by *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

*Jaros,* 70 F.3d 418, 420–21 (6th Cir.1995) (citing *Wilko,* 346 U.S. at 427, 74 S.Ct. 182) ("As an alternative to these statutory grounds, a separate judicially created basis for vacation obtains where the arbitration award was made 'in manifest disregard of the law.' "); *Federated Department Stores, Inc. v. J.V.B. Industries, Inc.,* 894 F.2d 862, 865 (6th Cir.1990) (recognizing the availability of "manifest disregard of the law" as a basis for vacatur).

■ These seemingly conflicting positions articulated by the Sixth Circuit can be reconciled. The Sixth Circuit did not explicitly overrule the line of cases recognizing "manifest disregard of the law" as a valid ground for vacatur in *Decker.* There is a reasonable understanding of the "manifest disregard" ground that is in keeping with the view that the FAA provides an exhaustive list of grounds for vacatur. *See* Hayford, *supra* note 2, at 817–819. When "properly utilized and applied, the 'manifest disregard' of the law standard does not lead to vacatur based on a judicial determination that the arbitrator made an error of law, of any degree. Instead, vacatur results when the arbitrator makes clear in some manner that she appreciates and understands the law relevant to the matter before her, but nevertheless proceeds to ignore that law. If a party seeking vacatur of a commericial arbitration award under section 10(a)(3) on this ground is able to prove a nexus between the arbitrator's 'manifest disregard' of the law and the arbitral result, a violation of section 10(a)(3) would be made out." *Id.* at 818. For the purpose of this motion, the Court will assume "manifest disregard" is available as a judicial interpretation of the ground set forth in Section 10(a)(3) of the FAA.

appeals "have clearly recognized" at least one non-statutory ground for vacatur. *Id.* at 774.

## A. Statutory Grounds for Vacatur

Plaintiffs have asserted three statutory grounds for vacatur. In addressing each of these grounds, the Court will heed the Sixth Circuit's instruction "that in light of the strong federal policy in favor of enforcing arbitration agreements, courts have only a limited role in reviewing arbitration awards as authorized under the FAA." *Decker*, 205 F.3d at 910–11 (citing *Federated Department Stores, Inc.*, 894 F.2d at 866; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

### 1. Section 10(a)(1)—Fraud

Plaintiffs argue that the arbitration award was procured by fraud or other undue means by Defendants. (Pl.'s Mot. to Alter or Amend Judg., and to Modify or to Vacate, in part, Arb. Award, ¶ 2.) Specifically, Plaintiffs contend that Merrion "concealed key documents and evidence, specifically requested by Crye–Leike, relating, to Merrion's intimate knowledge of the underwritings of the Crye–Leike plan and other U.S. employer groups performed by John Vogel of Houston, Texas, a consultant to American Heartland Claims Administrators, Inc." *Id.*, Ex. C, D. Plaintiffs maintain that Defendants Thomas and Verkaeren denied knowledge of these facts in their testimony. *Id.* Plaintiffs assert that Merrion's knowledge of these facts is established by the affidavits of Jack Ferguson and John Vogel. *Id.* Plaintiffs argue that they were disadvantaged by Defendants' alleged non-disclosure and perjury. *Id.*, Ex. E.

■ At the outset, the Court notes that the FAA does not provide for vacatur in the event of some fraudulent conduct, but only "where the award *was procured by* corruption, fraud, or other means." 9 U.S.C. § 10(a)(1) (emphasis added). Thus, the statute requires a nexus between the alleged fraud and the basis for the panel's decision. *See Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022 (5th Cir.1990). "The requisite nexus may exist where fraud prevents the panel from considering a significant issue to which it does not otherwise enjoy access. But where the panel hears the allegation of fraud and then rests its decision on grounds clearly independent of issues connected to the alleged fraud, the statutory basis for vacatur is absent." *Id.*

■ Here, by Plaintiffs' admission, the allegedly fraudulent conduct was explained to the arbitration panel prior to the finalization of the arbitration award. The affidavits of Jack Ferguson and John Vogel were offered to the arbitration panel with an explanation of their significance to this case. (Pl.'s Mot. to Alter or Amend Judg. and to Modify or to Vacate, in part, Arb. Award, ¶ 2, Ex. E.) Plaintiffs repeatedly brought to the arbitrators attention the documents that they contended were not produced by Merrion. (Pl.'s Description of Documents They Contend Have Not Been Produced by Merrion Reinsurance Company, Limited in the Arbitration Proceeding, filed April 27, 2001, p. 2.) In Plaintiffs' Post–Arbitration Brief, they argued that Merrion concealed documents, and that Merrion's representatives lied to Plaintiffs and perjured themselves during their testimony before the arbitration panel. *Id.*, Ex. E., pp. 1–5, 6–10, 17–19.

In resolving the dispute, the arbitrators held that "[t]he issue concerning agents can be considered as a mutual mistake on the part of the Parties as opposed to any deliberate intent to deceive." (Oct. 2, 2001, Arb.Award, ¶ e.) Although, the arbitrators did not state a finding with respect to Defendants' alleged intent to deceive during discovery and the arbitration proceeding, they were not required to explain their reasoning. *See United Steelworkers of America v. Enterprise Wheel and Car*

*Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The record indicates that the arbitration panel received all of the information Plaintiffs presented regarding Defendants' alleged fraudulent conduct. And, the arbitrators were able to resolve this dispute despite Defendants' purportedly deceitful conduct. It appears, therefore, that the panel determined that the asserted fraud was immaterial. *See Forsythe*, 915 F.2d at 1022 (holding that alleged discovery abuse by one party, even if true, did not lead to vacatur on basis of fraud because arbitration panel heard argument on allegations of fraud, received evidence of same, declared it would consider all evidence before it, and rendered a decision). Thus, the Court is convinced that this arbitration award was not procured by fraud.

### 2. *Section 10(a)(3)—Refusal to Hear Evidence*

■ Plaintiffs argue that the arbitrators refused to hear evidence pertinent and material to this controversy. (Pl.'s Mot. to Alter or Amend Judg., and to Modify or to Vacate, in part, Arb. Award, ¶ 2.) Specifically, Plaintiffs assert that the arbitrators refused to consider evidence that Merrion concealed key documents and evidence, including the affidavits of Jack Ferguson and John Vogel. *Id.* According to Plaintiffs, the refusal to consider these affidavits "allowed Mr. Thomas and Mr. Verkaeren to testify falsely with impunity, denied Crye–Leike a fair hearing . . . and allowed Messrs. Thomas and Verkaeren and, therefore, Merrion to profit from their wrongdoing." *Id.* In addition, Plaintiffs contend that the arbitrators refused to consider "Merrion's pattern and practice of fraud in conducting its 'reinsurance' scheme in its dealing with some 100 other United States employer health plans in addition to Crye–Leike." *Id.*

Plaintiffs are incorrect that the arbitrators refused to consider the affidavits of Jack Ferguson and John Vogel or any other evidence pertaining to Defendants' alleged discovery abuses and perjury. As was explained in the previous sub-section of this order, all of these documents and arguments were presented to the arbitration panel with an explanation of their significance to this case. (Pl.s' Mot. to Alter or Amend Judg. and to Modify or to Vacate, in part, Arb. Award, ¶ 2, Ex. E; Pl.'s Description of Documents They Contend Have Not Been Produced by Merrion Reinsurance Company, Limited in the Arbitration Proceeding, filed April 27, 2001, p. 2, Ex. E., pp. 1–5, 6–10, 17–19.)

While it might have been helpful for the arbitration panel to have explained the level of importance it placed on the alleged discovery abuses, it was not required to provide such an explanation. *See United Steelworkers of America*, 363 U.S. at 598, 80 S.Ct. 1358. In any event, because "the advantages of arbitration are speed and informality, an arbitrator should be expected to act affirmatively to simplify and expedite the proceedings before him." *Fairchild & Co., Inc. v. Richmond, F. & P.R.R.*, 516 F.Supp. 1305, 1313 (D.D.C. 1981).

■ Plaintiffs are also incorrect that the arbitration award should be vacated because the arbitrators refused to consider evidence of Merrion's alleged pattern and practice of fraud. In the final arbitration ruling, Mr. Cipolla, the reviewing arbitrator, explained that "it was immaterial and improper for the Panel to consider Merrion's position in other cases which are not relevant to this case. We can only go by the facts that are presented in this case, and should not be persuaded because of alleged misconduct in other, immaterial matters." (Final Arb. Award, p. 2.)

■ Evidentiary decisions of arbitrators "should be reviewed with unusual deference." *Gateway Tech, Inc. v. MCI Telecomm. Corp.*, 64 F.3d 993, 997 n. 4 (5th Cir.1995). Decisions on relevancy will only be reversed if there has been an abuse of discretion. *See Cook v. American S.S. Co.*, 53 F.3d 733, 742 (6th Cir.1995). Here, there is no indication that the arbitrators abused their discretion in refusing to consider evidence of Merrion's alleged pattern and practice of fraud in other cases.

Thus, the Court finds that the arbitration panel did not refuse to hear certain evidence and did not abuse its discretion in refusing to hear other evidence.

Plaintiffs also assert that the arbitration panel "manifestly disregarded the law applicable to the proceeding, . . . and manifestly failed to apply the law to the actual facts." (Pl.'s Mot. to Alter or Amend Judg., and to Modify or to Vacate, in part, Arb. Award, ¶ 3.) Plaintiffs cite eight instances of alleged manifest disregard. *Id.*, ¶ 3(a)-(h).

■ The Sixth Circuit has emphasized that "manifest disregard of the law" is a very narrow standard of review. *Jaros*, 70 F.3d at 421. In order to constitute a "manifest disregard of the law," the asserted error must be " 'obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." *M & C Corporation*, 87 F.3d at 851 (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986)). "When faced with questions of law, an arbitration panel does not act in manifest disregard of the law unless (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to

heed that legal principle." *Jaros*, 70 F.3d at 421.

None of the eight ways in which Plaintiffs assert the arbitrators manifestly disregarded the law warrant vacatur under the standard articulated by the Sixth Circuit. The only statement of law in the October 2, 2001 arbitration award is found in the first paragraph: "It is the finding of the Arbitrators that the terms of the document should control unless there is a clear intention to the contrary." (Arb.Award, ¶ a.) Having stated that legal principle, the arbitrators proceeded to resolve the dispute on the basis of the language of the contract because the parties had not shown a clear intention to the contrary. The arbitrators did not explicitly state any other legal principles upon which they relied in their decision.

Where the arbitrators decline to explain their resolution of certain questions of law, "a party seeking to have the award set aside faces a tremendous obstacle. If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside." *Jaros*, 70 F.3d at 421. "Yet even a misapplication of well defined and explicit legal principles does not constitute manifest disregard." *Jaros*, 70 F.3d at 421.

Plaintiffs argue that the arbitrators reached several conclusions based on erroneous application of law to facts. They fail, however, to meet the heavy burden established by the Sixth Circuit. Plaintiffs do not assert, for example, that the law being applied is well defined. They do not assert that the conclusions are legally implausible, or that no group of judges could come to the same conclusion. In fact, Plaintiffs do not explain how the arbitrators misapplied the law or even what

specific law they purportedly "manifestly disregarded." Plaintiffs instead make blanket assertions of incorrectness unsupported by case law or statute.

 This is a case involving a contract dispute. A "misinterpretation of [a] contract[ ] will not, in itself, vitiate the award." *Federated Dep't Stores, Inc.*, 894 F.2d at 866. As long as the arbitrators did not disregard the language of the contract in their interpretation of it, their decision is not manifest disregard of the law. *Id.* Here, the arbitrators explicitly stated that they reached their decision by construing the language of the contract. Therefore, the Court rules against Plaintiffs on this ground as well.

### 3. Section 10(a)(4)—Arbitrators Exceeded Powers

Plaintiffs summarily state that they have presented "sufficient grounds for vacating this award" under 9 U.S.C. § 10(a)(4), in addition to the two sub-sections discussed above. The Court can not discern in Plaintiffs' motion or memorandum of law an explanation of how the "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *See* 9 U.S.C. § 10(a)(4). Therefore, it must rule against Plaintiffs on this final ground.

In sum, Plaintiffs have not presented sufficient grounds for vacatur. It is apparent that Plaintiffs' motion is nothing more than an attempt to convince the Court to revisit the arbitration award because they didn't like the outcome. That task does not fit within the limited role this Court may play when called upon to vacate or modify an arbitration award. *See id.; see also Gingiss International Inc. v. Bormet,* 58 F.3d 328, 333 (7th Cir. 1995 ("Thinly veiled attempts to obtain appellate review of an arbitrator's decision" are not permitted under the FAA.)

### B. Statutory Grounds for Modification

It does not appear to the Court that Plaintiffs have asserted any grounds for modification or correction of the arbitration award. Therefore, the Court rules against Plaintiffs on this request.

## IV. Conclusion

For the foregoing reasons, the Court DENIES Plaintiffs' Motion to Alter or Amend Judgment and to Modify or to Vacate, in part, Arbitration Award.