**Michelle MINSHEW, Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY, Defendant.**

**No. 02–75154.**

United States District Court,
E.D. Michigan,
Southern Division.

April 1, 2003.

Ellen Donnelly, Maroko & Landau, PC, Farmington Hills, for Plaintiff Counsel.

Andrew L. Finn, Hickey, Cianciolo & Fishman, PC, Detroit, for Defendant Counsel.

## OPINION AND ORDER

FEIKENS, District Judge.

This action arose when plaintiff filed a complaint in Oakland County Circuit Court to confirm an arbitration award in her favor. Defendant removed the case to this court because of diversity jurisdiction under 28 U.S.C. § 1332(a). This matter is before me because defendant has filed a Motion to Vacate an Arbitration Award, and because plaintiff has filed a Motion to Confirm the Arbitration Award. A hearing was held on these matters on March 18, 2003.

## I. FACTS

The facts are undisputed. Plaintiff Michelle Minshew was employed by SelectCare, Inc., and purchased a voluntary insurance policy issued by defendant Federal Insurance Company ("Federal") to SelectCare, Inc. Ms. Minshew's husband Steve Minshew was also an "insured person" under the policy. The policy contained the following grant of coverage:

> We will pay the applicable Benefit Amount if an Accident results in a Loss not otherwise excluded. The Accident must result from a covered Hazard and occur while this policy is in force. The loss must occur within one (1) year of the Accident.

(Def.Ex. 1). The policy provides this definition for Accident:

> Accident or Accidental means a sudden, unforeseen, and unexpected event which happens by chance, arises from a source external to the Insured Person, is independent of illness, disease or other bodily malfunction and is the direct cause of loss.

*Id.*

Unknown to plaintiff, her husband had used illegal drugs on occasion. On February 25, 2000, Minshew's attempt to get "high" proved to be fatal. He died as the result of a lethal injection of cocaine and heroin, administered by a third party, Melissa Pike.

In a criminal trial, Pike stated that while she was working as a prostitute, Minshew approached her to buy drugs on the morning of February 24, 2000. She procured the heroin and cocaine requested by Minshew from another source. The two then drove to a motel, and Pike injected the drugs into Minshew's arm. Pike testified that on at least two occasions during the day and night of February 24th, Minshew gave her more money and the use of his car to purchase more drugs, and she injected him with heroin on at least three occasions. Early in the morning of February 25, 2000, Minshew passed out. Pike took his necklace, bracelet, ring, credit cards and car and left him in that condition in the motel room. Minshew was found dead later that morning. Pike pleaded guilty to manslaughter and delivery of heroin.

In June 2000, plaintiff filed a claim under Federal's policy for the accidental death of her husband. In January 2001, defendant denied plaintiff's claim on the ground that her husband's death was not an accident and therefore was not covered,

or if covered, it was excluded under the intentional injury exclusion. Pursuant to the policy, plaintiff made a written demand for arbitration.

The parties appeared before an arbitration panel on December 11, 2001. The arbitration panel requested that counsel brief certain issues and allowed further discovery regarding the administration of defendant's insurance plan and the evaluation of plaintiff's claim. A second hearing was held on October 29, 2002, following which the arbitrators issued a written opinion in which they awarded plaintiff $200,000.00. To date, defendant has refused to pay plaintiff the amount awarded and has moved to have the award vacated.

## II. STANDARD OF REVIEW

■ A federal court may vacate an arbitration award if certain statutory or judicially-created grounds for vacation are present. The Federal Arbitration Act, 9 U.S.C. §§ 10 and 11, sets forth specific statutory grounds relating to the integrity of the arbitration procedure. In addition to these statutory grounds, a judicially-created basis for vacation exists where the arbitration award was made "in manifest disregard of the law." *Merrill Lynch v. Jaros*, 70 F.3d 418, 420 (6th Cir.1995), *quoting Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In *Merrill*, the United States Court of Appeals for the Sixth Circuit found:

A mere error in interpretation or application of the law is insufficient: Rather, the decision must fly in the face of clearly established legal precedent. When faced with questions of law, an arbitration panel does not act in manifest disregard of the law unless (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2)

the arbitrators refused to heed that legal principle.

70 F.3d at 421. The court also stated:

If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside.

*Id.*

■ In the context of contract interpretation, the Sixth Circuit has found "[a] misinterpretation of the contract will not, in itself, vitiate the award." *Federated Dept. Stores v. J.V.B. Industries*, 894 F.2d 862, 866 (6th Cir.1990); *see also Crye-Leike, Inc. v. Thomas*, 196 F.Supp.2d 680 (W.D.Tenn.2002). As long as the arbitrators do not disregard the language of the contract in their interpretation of it, their decision is not manifest disregard of the law. *Id.* at 687.

Defendant argues that the decision of the arbitrators was made in manifest disregard of the law for the following reasons: (1) the policy at issue was part of Select-Care's Employee Retirement Income Security Act (ERISA) plan, and should have been subject to review under the arbitrary and capricious standard; (2) Minshew's death was not caused by an accident under the terms of the policy; and (3) the policy excluded loss that is intentionally self-inflicted.

## III. ANALYSIS

### 1. Application of ERISA

■ Defendant claims that the panel acted in manifest disregard for the law when it found that ERISA does not apply to Federal's accident policy. In reaching the conclusion that ERISA is inapplicable, the panel applied the standards set forth by the Sixth Circuit in *Thompson v. Amer-*

*ican Home Assurance Company,* 95 F.3d 429 (6th Cir.1996).

> In determining whether a plan is an ERISA plan, a district court must undertake a three-step factual inquiry. First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA....Second, the court must look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits....Finally, the court must ask whether the employer 'established or maintained' the plan with the intent of providing benefits to its employees." (Citations omitted).

95 F.3d at 434–35. The "safe harbor" provisions are found at 29 C.F.R. 2510.3–1(j).

These regulations provide that an employee insurance policy is exempt from ERISA if it meets all four of the following conditions:

> (1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.

95 F.3d at 435. In *Thompson,* the Sixth Circuit opined that with respect to the third factor, a court should find employer endorsement if, "upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan." *Id.*

In this case, the arbitration panel applied the *Thompson* factors to Federal's plan and determined that SelectCare did not establish or maintain a plan with the intent of providing benefits to SelectCare's employees. (Def.Ex. K., 4). It found the plan would also be excluded under the "safe harbor" regulation because Federal's policy is not funded by SelectCare and SelectCare does not endorse the policy. *Id.*[1] Based on the totality of circumstances, it cannot be said that the panel disregarded clearly established legal principles by concluding that ERISA does not apply to Federal's policy.

### 2. Interpretation of Federal's Policy

■ The Federal policy provides in relevant part:

> We will pay the applicable Benefit Amount if an Accident results in a Loss not otherwise excluded. The Accident must result from a covered Hazard and occur while this policy is in force. The loss must occur within one (1) year of the Accident.

(Def.Ex. 1). The policy contains the following definition of Accident:

> Accident or Accidental means a sudden, unforeseen, and unexpected event which happens by chance, arises from a source external to the Insured Person, is independent of illness, disease or other bodily malfunction and is the direct cause of loss.

---

1. Defendant does not dispute that its policy meets criteria (1), (2) and (4) of the "safe harbor" requirements.

Loss means the types of Accidental Bodily Injuries listed in Section IV of the Declarations for which this policy provides coverage.

The policy also provides the following relevant exclusion:

This insurance does not apply to suicide, attempted suicide or loss that is intentionally self-inflicted.

### A. Accidental Bodily Injury

The arbitration panel found that the explanation of "accident" in Federal's policy is ambiguous because it does not define the term "event" and does not specify from whose perspective the unexpectedness of the death is to be determined. (Def.Ex. K, 4). The Michigan Supreme Court has held that absent contractual language establishing an objective standard or otherwise defining "accidental," the accidental nature of the event must be evaluated from the injured person's perspective. *Auto Club Group Ins. Co. v. Marzonie*, 447 Mich. 624, 527 N.W.2d 760 (1994).

The panel applied Michigan case law and found that Minshew did not expect the fatal result of his conduct. *Collins v. Nationwide Life Ins. Co.*, 409 Mich. 271, 294 N.W.2d 194 (1980); *Allstate Insurance Co. v. McCarn*, 466 Mich. 277, 645 N.W.2d 20 (2002). After considering that Minshew had used drugs on past occasions without ill effects and the fact that there is no evidence he anticipated the lethal dose, the panel also found that a reasonable person in Minshew's position would not have considered death highly likely to occur as a result of allowing Pike to inject him with heroin.

Since there is evidentiary support for the conclusion that Minshew's death was unforeseen and unexpected from his perspective, it was not manifest disregard of the law for the panel to conclude that his death was "accidental" under the terms of Federal's policy.

### B. Intentional Injury

██ Federal's policy excludes death by suicide and loss which is intentionally self-inflicted but does not explicitly exclude death which results from drug use. The panel found that Minshew's death was not the result of a self-inflicted injury because there was no evidence of a specific intent to injure himself. (Def.Ex. K, 5). *See Bruce v. Cuna Mutual Insurance Society*, 219 Mich.App. 57, 555 N.W.2d 718 (1996) (finding that although it appears the decedent intended to become intoxicated, he did not intend to injure himself and thus the self-inflicted injury exception did not apply). In *Bruce*, the Michigan Court of Appeals found that whether an injury is intentional should be evaluated from the subjective perspective of the decedent.

In this case, although it appears that Minshew intended to get high, the record supports the panel's conclusion that he did not intend to injure himself. There is no evidence that the decedent tried to commit suicide, or that he was knowledgeable about the severity of risks involved with the drugs he occasionally used. Further, the lethal dose was administered by someone who had greater knowledge of the risks involved and who was convicted of manslaughter.

██ In support of its argument that Minshew's death was intentional, defendant relies upon federal case law which states that it is not necessary to determine whether the insured intended to kill himself. *Holsinger v. New England Mutual Life Insurance Company*, 765 F.Supp. 1279 (E.D.Mich.1991). However, the arbitrators were only required to apply federal law if they found that an employee benefit plan under ERISA had been established. *Whitworth Bros. Storage Co. v. Central States*, 794 F.2d 221, 234 (6th Cir.1986). Since the panel found ERISA inapplicable,

**720**

they correctly applied state law principles to the interpretation of Federal's contract.

While it is well settled that arbitrators lack authority to disregard or modify plain and unambiguous contract language, in this case the arbitrators interpreted contract language which they found to be ambiguous. *See Storer Broadcasting Co. v. American Federation of Television and Radio Artists*, 600 F.2d 45, 47 (6th Cir. 1979). Because the arbitration panel did not disregard the language of the contract in their interpretation of the terms "accident" and "intentional injury," they did not act in manifest disregard for the law in finding that Minshew's death was covered by the Federal policy. *Crye–Leike, Inc.* 196 F. Supp 2d at 687.

## IV. CONCLUSION

Defendant has not met the heavy burden imposed by the Sixth Circuit: establishing that the panel's conclusions are legally implausible, or that no group of judges could come to the same conclusion. *Jaros*, 70 F.3d at 420. The arbitration panel did not act in manifest disregard of the law when it found that 1) ERISA does not apply to the denial of accidental death benefits under Federal's policy, and 2) Minshew's death was "accidental" under the terms of the policy and was not an excluded intentional injury.

Thus, plaintiff's Motion to Confirm the Arbitration Award is hereby GRANTED.

**IT IS SO ORDERED.**